# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re:<br><br>**UFOOD RESTAURANT GROUP, INC., et al.,**[1]<br><br>       **Debtors** | **Chapter 11**<br><br>**Case No.  12-19702-HJB**<br><br>**Jointly Administered** |

## MOTION BY CHAPTER 11 TRUSTEE TO (A) AUTHORIZE TRUSTEE TO ENTER INTO ASSET PURCHASE AGREEMENT WITH UFOOD INVESTMENT PARTNERS, LLC; (B) AUTHORIZE SALE OF THE DEBTORS' ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (C) AUTHORIZE THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (D) FOR RELATED RELIEF

In accordance with Sections 105, 363, and 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 6004, and MLBR 6004, Harold B. Murphy, the Chapter 11 trustee for UFood Restaurant Group, Inc. ("UFood"), Knowfat Franchise Company, Inc. ("Knowfat Franchise"), KFLG Watertown, Inc. ("KFLG"), Knowfat of Landmark Center, Inc. ("Knowfat Landmark"), and Knowfat of Downtown Crossing, Inc. ("Knowfat DC", and together with UFood, Knowfat Franchise, KFLG and Knowfat Landmark, the "Debtors"), hereby moves this Court to authorize the Trustee to enter into an asset purchase agreement (the "APA") for: (i) the private sale of substantially all of the assets (the "Acquired Assets") of the bankruptcy estates (collectively the "Estates") of UFood, Knowfat Franchise, and KFLG (collectively, the "Sellers") to UFood Investment Partners, LLC ("UFIP"), an insider of the Debtors and affiliate of the

---

[1] The related joint administered cases with the case of UFood Restaurant Group, Inc. are: Knowfat Franchise Company, Inc., Case No.: 12-19704, KFLG Watertown, Inc., Case No.: 12-19705, Knowfat of Landmark Center, Inc., Case No.: 12-19708, and Knowfat of Downtown Crossing, Inc., Case No.: 12-19706.

Supporting Noteholders (as defined below); (ii) the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") in connection with the sale; and (iii) related relief. Contemporaneously herewith, the Trustee has filed a motion to establish bidding procedures and to approve a termination fee in connection with the proposed sale.

Among other things, the proposed sale to UFIP provides for a payment of $1,000,000 to the Sellers' Estates and the waiver of more than $1,000,000 in pre-petition secured claims asserted by the Supporting Noteholders as well as the waiver of the post-petition secured claims of UFIP (collectively the "Asserted Secured Claims"). Subject to consideration of any higher offers, the Trustee has concluded that the sale will generate substantial unencumbered funds for the benefit of creditors of the Estates, will resolve issues respecting the validity, priority, and extent of the Asserted Secured Claims, and will facilitate the prompt administration of the cases. Because the Debtors have minimal funds and continue to operate at a loss, an expeditious sale of the Acquired Assets represents the best prospect for achieving a meaningful recovery for creditors.

In further support of this motion, the Trustee avers as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, 363, and 365 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure ("FRBP"), and MLBR 6004-1 and 6006-1.

## BACKGROUND

3.      On December 14, 2012 ("Petition Date"), each of the Debtors filed voluntary

petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy

Code") with this Court.

4.      The cases are being jointly administered pursuant to FRBP 1015.

5.      The Debtors are engaged in the franchising and operation of fast-casual food

service restaurants under the name UFood Grill.  Prior to the Petition Date, KFLG, Knowfat

Landmark and Knowfat DC operated four company-owned UFood restaurants in the Boston

area.  After the Petition Date and prior to the appointment of the Trustee, the Debtors closed

three (3) of the company-owned restaurants that were not profitable.  Only the restaurant located

at Logan Airport continues to operate.

6.      UFood's primary business operations are those of a franchisor.  At present, there

are nine (9) franchisee-owned UFood restaurants located in Boston, Massachusetts; Cleveland,

Ohio; Salt Lake City, Utah; Dallas, Texas; Vancouver, Canada; Washington, D.C.; and at the US

Air Force base in South Dakota.

7.      The Debtors commenced operations approximately eight (8) years prior to the

Petition Date.  Since their inception, the Debtors have operated at a net loss.  These losses were

financed by various rounds of debt advances and/or capital infusions.

8.      In the year prior to the Petition Date, certain creditors, some of whom are insiders

(collectively the "Supporting Noteholders")[2] advanced approximately $1,100,000 to the Debtors

in a series of three (3) tranches.  The Court appointed an examiner to, among other things,

---

[2] The Supporting Noteholders are: Golden Opportunity Consulting LLC; Keith Mueller; Bob Grayson; George
Naddaff; Phillip George; Greg Storm; Prospect Point, Inc.; Mark Greenberg; Donald Richards; Michael D.
Goodson; Kenneth Corless; Kenton Keller; Martingale Holdings II, LLC; Timothy Finnegan; Harry Brakeley; Philip
Sheibley; Scott Jecmen; Warren Watkins; Bob W. Denner Living Trust; Terry Adams; and 1998 Rey Family Trust.

investigate issues surrounding the advances made to the Debtors by the Supporting Noteholders

and issues respecting the validity, priority, and extent of liens and claims asserted by the

Supporting Noteholders. The examiner concluded, in her report filed on July 19, 2013, that

some or all of the advances made by the Supporting Noteholders might be subject to equity re-

characterization and that the liens asserted by the Supporting Noteholders to secure their claims

might be subject to avoidance.

9.      On July 26, 2013, the Trustee was appointed Chapter 11 Trustee.

10.     In the days following his appointment, the Trustee conferred with the Debtors, the

Supporting Noteholders, UFIP, and a potential third party acquirer respecting opportunities for

reorganizing the Debtors' affairs. As a result of these discussions, the Trustee, UFIP, and the

Supporting Noteholders reached a series of agreements that, together, would form the basis for

the Sellers' reorganization: (a) expansion of the Sellers' franchise program; (b) a short-term post-

petition lending facility to support operations pending a sale; and (c) the acquisition by UFIP of

the Acquired Assets.

11.     On or about August 2, 2013, the Trustee filed a motion for authority to enter into

a franchise agreement with Sodexo Operations, LLC ("Sodexo") for a franchised fast-casual

food service restaurant located in Albany, New York. By order dated August 5, 2013, the Court

authorized the Trustee to enter into the new franchise agreement. The commencement of a new

franchised restaurant in Albany, New York is part of a broader agreement whereby Sodexo has

committed to opening ten (10) additional franchised UFood restaurants.

12.     On August 2, 2013, the Trustee also filed a motion for entry of an order approving

an amended post-petition financing agreement and for authority to continue use of cash collateral

(the "Financing Motion"). Pursuant to the Financing Motion, the Trustee requested authority to

use available cash collateral and to borrow up to $110,000 from UFIP pursuant to a post-petition

lending facility (the "DIP Loan") in order to ensure sufficient operating funds pending the

Court's consideration of this motion, including an advance of $60,000 on an interim basis (the

"Payroll/Tax Deposit").  On August 5, 2013, the Court approved the Financing Motion on an

interim basis and scheduled a final hearing on the Financing Motion for August 28, 2013.

### The Proposed Sale to UFIP[3]

13.    The APA provides for a sale by the Sellers to UFIP of the Acquired Assets in

exchange for the following consideration (the "Purchase Price"):

(a)    cash in an amount equal to $1,000,000.00, less the amount of the unexpended
Payroll/Tax Deposit at Closing (the "Cash Portion");

(b)    the assumption of the Assumed Liabilities (as described below);

(c)    the delivery of a release from the Supporting Noteholders of all liens, claims and
encumbrances against the Debtors (the "Notes Waiver"); and

(d)    the delivery of a release of all liens, claims and encumbrances against the Debtors
arising from or related to the DIP Loan (the "DIP Waiver" and together with the Notes Waiver
the "Claim Waivers").

14.    The Acquired Assets include the following:

(a)    all personal property of the Sellers, including inventory, machinery, equipment,
furniture, tools and other tangible property (other than the Excluded Assets);

(b)    subject to Section 6.5 of the APA, any rights under contracts, agreements, leases
and licenses to which any one of Sellers is a party and which constitute Assumed Contracts (as
defined herein);

(c)    all licenses, approvals and permits of Sellers, to the extent assignable;

(d)    all U.S. and foreign inventions, invention disclosure statements, trademarks,
service marks, certification marks, collective marks and trade names, patent applications, patents
and registered rights and continuations thereof, trade secrets, confidential information, know

---

[3] The APA is attached as Exhibit A.  Parties are advised to refer to the APA for a detailed discussion of the terms
and conditions of sale.  To the extent of any inconsistencies between this motion and the APA, the provisions of the
APA shall govern.  Any capitalized terms not defined herein shall have the meanings ascribed to such terms in the
APA.

how, show how, trade dress, industrial designs, formulations, recipes, copyrights, mask works, websites, e-mail addresses, Internet domain names, customer lists, goodwill and other items of intangible or intellectual property;

(e) all accounts receivable, notes receivable, other obligations receivable, cash and cash equivalents other than the Payroll/Tax Deposit;

(f) all post-petition prepaid expenses and deposits;

(g) subject to Section 2.6 of the APA, the Remaining Net Operating Losses; and

(h) all books and records of Sellers (other than corporate governance documents and historical financial information), whether in hard copy or computer format, to which Buyer shall afford Sellers reasonable access after the Closing.

15. All other assets (the "Excluded Assets") are excluded from the sale and include

the following:

(a) insurance policies and proceeds of insurance (provided that, if Sellers receive any insurance proceeds post-petition on account of damage to the Acquired Assets, at Buyer's option, Sellers shall either apply said proceeds toward the repair of the Acquired Asset or turn over such insurance proceeds to Buyer at Closing);

(b) rights and obligations under contracts, agreements, leases or licenses of Sellers which do not constitute Assumed Contracts;

(c) all rights to or claims for refunds or rebates of taxes for any period ending on or prior to the Closing Date, and the benefit of net operating loss carryforwards, carrybacks or other credits of Sellers relating to any such period other than the Remaining Net Operating Losses; and

(d) causes of action, judgments, claims, demands, rights of recovery or set-off of whatever nature, condemnation awards, including, without limitation, avoidance actions arising under 11 U.S.C. §§544-551, but excluding causes of action arising in the ordinary course of business which are (i) required to enforce Buyer's rights to ownership of the Acquired Assets or (ii) related to the condition of the Inventory.

## Assumption of Liabilities

16. UFIP has agreed to assume the following liabilities (the "Assumed Liabilities") in

connection with its purchase of the Acquired Assets:

(a) post-petition trade payables incurred by the Sellers' Estates in the ordinary course of business, as well as accrued payroll, payroll taxes, meals taxes, and vacation pay (but excluding professional fees, tax liabilities (other than payroll and meals taxes) or damages arising from the

rejection of an executory contract or unexpired lease; and

      (b)     liabilities and obligations of the Sellers under the Assumed Contracts, including any Cure Claims.

      17.     Except as provided herein, the Acquired Assets shall be sold and conveyed to UFIP free and clear of liens, claims, and encumbrances.

### Assumption and Assignment of Executory Contracts and Unexpired Leases

      18.     UFIP shall have the right to designate those executory contracts and unexpired leases which are to be assumed by the Sellers and assigned to UFIP (the "Assumed Contracts"). An initial list of the Assumed Contracts and any cure costs associated with assumption and assignment is set forth on Schedule 2.1(b) of the APA (the "Assumed Contract Notice").   At least seven (7) days prior to the hearing on approval of this motion (the "Sale Hearing"), UFIP may designate additional contracts and leases to be assumed and assigned and/or remove contracts and leases previously designated as Assumed Contracts.   UFIP shall have sole responsibility to perform and/or satisfy any and all cure obligations associated with assumption and assignment (the "Cure Claims") and to provide any adequate assurance of future performance of the Assumed Contracts.

      19.     Upon approval of the motion to establish bid procedures in connection with the sale, the APA including the identification of Assumed Contracts will be served upon each counterparty to the Assumed Contracts, together with notice of the deadline for filing objections to the Cure Claims set forth therein.   The failure of a counterparty to any of the Assumed Contracts to file an objection to the Cure Claims by the objection deadline will forever bar such party from asserting any other cure amount or otherwise disputing the cure amount with respect to the applicable Assumed Contract or otherwise contesting the proposed assumption, assignment, and sale of such Assumed Contract.   The filing of an objection to the Cure Claims

shall not constitute an objection to the assumption, assignment, and sale of an Assumed Contract

but shall reserve the rights of such objecting party to determine the correct cure amount.  UFIP

shall be responsible for the charges accruing post-Closing with respect to the Assumed

Contracts.

### Other Terms and Conditions of the Sale

20.    Other terms and conditions of the sale include the following:

(i)    The Closing shall occur on the second business day following entry of an order approving this motion, provided that in no event shall  the Closing be later than September 20, 2013;

(ii)    The proposed sale is not subject to any financing or due diligence contingency. The sale is subject to a material adverse change condition.  The term "material adverse change", however, shall be limited to: (a) the cessation of operations by the Sellers; (b) the entry of any order by the Court to convert Sellers' Chapter 11 bankruptcy cases to Chapter 7; (c) except in connection with a competing bid pursuant to this sale process, the execution by Sellers of an agreement with a third party for the sale of the Acquired Assets; (d) the termination by Sellers, other than for cause, of certain designated employees; and

(iii)    approval of certain bidding and sale procedures and a termination fee as set forth in Section 9.1 of the APA and the motion to approve bidding procedures filed herewith.

### Liens Against the Acquired Assets

21.    Pursuant to Code Section 363, the Trustee requests authority to sell the Acquired

Assets free and clear of all liens, claims, interests, and encumbrances whatsoever, known and

unknown, including without limitation liens, claims, interests, and encumbrances held by any of

the Sellers' creditors.  Any and all encumbrances shall attach to the proceeds of the sale subject

to the validity, priority, and extent of such liens, except for the liens asserted by the Supporting

Noteholders and UFIP being released pursuant to the Claim Waivers.  At present, the Trustee is

aware of only one entity other than the Supporting Noteholders and UFIP asserting a lien upon

the Acquired Assets – Great American Leasing Co. ("GAL"), on account of certain equipment

purchased pursuant to equipment financing agreements.

**Benefit to the Estates**

22.     The schedules and statement of financial affairs of the Sellers reflect scheduled

non-priority unsecured indebtedness of approximately $1,800,000 and minimal priority

unsecured indebtedness.  Although the Trustee has not yet had an opportunity to conduct a

detailed analysis of claims filed, it appears based upon scheduled information and

communications with the principal constituencies in the cases that the consideration to be

provided by UFIP for the Acquired Assets, including the Claim Waivers, will likely enable a

meaningful recovery for the Sellers' creditors.

**Argument**

**The Trustee may sell the Acquired Assets outside of the ordinary course of business.**

23.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1).  In accordance with FRBP 6004(f)(1), sales of property

outside the ordinary course may be by private sale or public auction.

24.     The majority of courts have applied a business judgment test, requiring that a

"sound business reason" exist in support of an estate's request to sell property other than in the

ordinary course of business.  See, e.g., In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir.

1983); In re Allegheny Int'l, Inc., 117 B.R. 171, 176-77 (W.D. Pa. 1990); In re Stroud Ford, Inc.,

163 B.R. 730, 732 (Bankr. M.D. Pa. 1993).  The courts further require that the estate's use of the

property be proposed in good faith.  In re Abbotts Dairies, Inc., 788 F.2d 143, 149-50 (3d Cir.

1986); Lionel, 722 F.2d at 1070-71; Allegheny, 117 B.R. at 176-77.

25.     Ample basis exists for a sale of the Acquired Assets outside of the ordinary course

of business.  Given the Sellers' ongoing losses and limited working capital, an expeditious sale

9

of the Acquired Assets is the most viable reorganization alternative.  A going concern sale of the

Acquired Assets will maximize recovery for creditors.  The Trustee believes that the Purchase

Price is greater than that which would be achieved in a forced liquidation.  Additionally, the

Trustee will have an opportunity to further market the Acquired Assets over the next 20 to 30

days to ensure that the proposed sale represents the best possible recovery.[4]  The motion to

establish bidding procedures and termination fee provisions, filed contemporaneously herewith,

sets forth the process by which interested third parties may submit higher offers and participate

in an auction for the Acquired Assets.

### Assumption And Assignment Of The Executory Contracts and Unexpired Leases Is Supported By The Trustee's Business Judgment And Should Be Approved By The Court

26.     Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the

Court's approval, may … assume any executory contract or unexpired lease of the debtor."  11

U.S.C. § 365(a).

27.     Once the statutory predicates for assumption and assignment have been satisfied,

as is the case here, the standard to be applied by a court in determining whether an executory

contract or unexpired lease should be assumed is the "business judgment" test, which is premised

upon the trustee's business judgment that assumption would be beneficial to the estate.  See

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures), 4 F.3d 1095, 1098 (2d

Cir. 1993).  "More exacting scrutiny would slow the administration of the debtor's estate and

increase its cost, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially."

Richard Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

---

[4] The Sellers did participate in earlier negotiations with a third party for a sale of the Acquired Assets.  The amount of consideration offered, however, was substantially less than the amount proposed to be paid by UFIP and did not include the Claim Waivers.

28.     Upon finding that a trustee has exercised sound business judgment in determining

that assumption of an agreement is in the best interests of its estate, the Court should approve the

assumption under section 365(a) of the Bankruptcy Code.  See, e.g., In re Child World, Inc., 142

B.R. 87, 89 (Bankr. S.D.N.Y. 1992); In re TS Indus., Inc., 117 B.R. 682, 685 (Bankr. D. Utah

1990); In re Del Grosso, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990); In re Ionosphere Clubs, Inc.,

100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989).

29.     Good cause exists to authorize the assumption of the Assumed Contracts and their

assignment to UFIP.  The Assumed Contracts constitute agreements necessary to ongoing

business operations and are an integral component of the APA.  Because UFIP bears

responsibility for payment of Cure Claims and demonstration of adequate assurance of future

performance, the assumption and assignment of the Assumed Contracts will have no impact

upon the Sellers' Estates other than potentially eliminating claims arising from later rejection of

some or all of these contracts.

## Notice

30.     Copies of this Motion shall be served upon the United States Trustee, known

secured creditors, the twenty (20) largest unsecured creditors, and parties having filed notices of

appearance.  The Trustee proposes to serve the notice of sale attached as Exhibit B upon all

known creditors and parties in interest, and any parties having expressed an interest in

purchasing the Acquired Assets.  Such notice is in compliance with FRBP 2002.

## Conclusion

31.     Approval of the relief requested in this motion is in the best interests of the

Estates, creditors and parties in interest.  The Trustee believes that the consummation of the sale

will create the best opportunity to maximize recovery for creditors.  The Trustee requests that

the Court enter an order authorizing the sale.

32.     The Trustee requests that the Court waive the fourteen (14) day stay provisions of

FRBP 6004(h).

33.     The private sale to the Purchaser is subject to the interposition of objections or

higher counteroffers.    The Trustee has filed the motion to establish bid procedures which will

govern the consideration of competing bids for the acquisition of the Acquired Assets.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order:

A.      Authorizing the Trustee to execute the APA;

B.      Authorizing and approving the sale of the Acquired Assets pursuant to the APA
and as described in this motion out of the ordinary course, pursuant to 11 U.S.C.
§363(b)(1), and free and clear of all liens, claims, encumbrances, and interests
except as otherwise provided herein, pursuant to 11 U.S.C. §363(f), as well as the
assumption and assignment of the Assumed Contracts, to UFIP or such other
higher bidders who may comply with the order approving the bid procedures
motion;

C.      To the extent that a party submitting the highest and best offer fails to close on the
sale of any of the Acquired Assets, authorizing the Trustee to sell any of the
Acquired Assets in accordance with the order approving the bid procedures
motion;

D.      Approving the form of notice of sale attached as Exhibit B, to be served on
creditors, parties in interest and potential bidders for the Acquired Assets
immediately after Court approval of the bid procedures motion;

E.      Finding that UFIP is a good faith buyer pursuant to the provisions of 11 U.S.C. §
363(m);

F.      Ordering that the cure obligations associated with assumption and assignment of
the Assumed Contracts are as set forth on Schedule 2.1(b) to the APA;

G.      Waiving the fourteen (14) day stay provisions of FRBP 6004; and

H.    Granting such other relief as is just and proper.

Respectfully submitted,

HAROLD B. MURPHY,
CHAPTER 11 TRUSTEE,
By his counsel,


/s/ D. Ethan Jeffery
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
Phone: (617) 423-0400
Fax: (617) 423-0498
dej@murphyking.com

August 14, 2013
654311

IN RE: UFOOD RESTAURANT GROUP, INC., *ET AL.*
BANKRUPTCY NO. 12-19702 (HJB)

EXHIBIT A TO

MOTION BY CHAPTER 11 TRUSTEE TO (A) AUTHORIZE
TRUSTEE TO ENTER INTO ASSET PURCHASE AGREEMENT WITH
UFOOD INVESTMENT PARTNERS, LLC; (B) AUTHORIZE SALE
OF THE DEBTORS' ASSETS BY PRIVATE SALE FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(C) AUTHORIZE THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS; AND (D) FOR RELATED RELIEF

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), dated as of August __, 2013, is by and between Harold B. Murphy (the "Trustee"), as Chapter 11 trustee for the bankruptcy estates of UFood Restaurant Group, Inc. ("UFood"), Knowfat Franchise Company, Inc. ("Knowfat Franchise"), and KFLG Watertown, Inc. ("KFLG" and together with UFood, Knowfat Franchise, KFLG collectively, the "Sellers"), and UFood Investment Partners, LLC, a Delaware limited liability company or its nominee ("Buyer").

## WITNESSETH

WHEREAS, on December 14, 2012 (the "Petition Date") Sellers each filed for protection under Chapter 11 of the United States Bankruptcy Code, as amended;

WHEREAS, Sellers' affiliates Knowfat of Landmark Center, Inc. ("Knowfat Landmark") and Knowfat of Downtown Crossing, Inc. ("Knowfat DC" and together with Knowfat Landmark and Sellers the "Debtors") have also filed for protection under Chapter 11 of the United States Bankruptcy Code;

WHEREAS, the Trustee was appointed Chapter 11 Trustee of the Debtors on July 26, 2013;

WHEREAS, the Debtors' bankruptcy cases are being jointly administered under case number 12-19702-HJB (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court");

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, substantially all assets that are owned by Seller, excluding the Excluded Assets (as defined below) and subject to the terms and conditions of this Agreement; and

WHEREAS, the Acquired Assets (as defined below) will be sold pursuant to the terms of this Agreement and an order of the Bankruptcy Court approving and authorizing such sale free and clear of liens, claims, encumbrances and interests under Section 363 of the Bankruptcy Code pursuant to a Sale Approval Order (as defined below).

**NOW, THEREFORE,** in consideration of the foregoing and the mutual covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1

# ARTICLE I

## DEFINITIONS

1.1    **Defined Terms**.        In addition to terms that are used and otherwise defined in this Agreement, the terms below shall have the following meanings:

"**Auction**" shall mean the auction that shall, subject to the terms of this Agreement, be scheduled to take place for the sale of the Acquired Assets pursuant to a motion to be filed by the Sellers with the Bankruptcy Court.

"**Assumed Contract**" shall mean any contract, agreement, lease and/or license that (i) is listed on Schedule 2.1(b) of this Agreement, as same may be amended from time to time in accordance with Section 6.5 of this Agreement; (ii) is subject to an order entered by the Bankruptcy Court that authorizes the Sellers to assume and assign the contract, agreement, lease and/or license to Buyer free and clear of Encumbrances; and (iii) is actually assumed by Sellers and assigned to Buyer.

"**Bankruptcy Code**" shall mean the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., as amended.

"**Business Day**" shall mean any day excluding Saturday, Sunday and any day that is a legal holiday within the meaning of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

"**Cure Claims**" shall mean those amounts required to be paid to counterparties to Assumed Contracts to cure defaults under Assumed Contracts.

"**DIP Financing**" shall mean the post-petition financing provided to Sellers by Buyer pursuant to the DIP Order, including, without limitation, the $60,000 advanced to fund the entire Payroll/Tax Deposit.

"**Designated Employees**" shall mean the following: Irma Norton (CFO), Tom Mackey (VP of Operations), Carlos Magalhaes (Executive Chef), Walter Pomerlau (Director of Franchising), Danielle Briggs (Comptroller), Stephanie Hunter (Director of Training), and John Nappier (Director of Non-Traditional Business Development).

"**DIP Order**" shall mean the order of the Bankruptcy Court dated August 5, 2013 [docket no. 162] approving the post-petition financing between Buyer and Sellers and any final order issued in connection therewith.

"**Encumbrance**" shall mean any interest, pledge, lien, mortgage, security interest, judgment, demand, successor liability claim, restriction, charge of any kind or nature, claim (as and to the full extent that term is defined in Bankruptcy Code Section 101(5) of the Bankruptcy

2

Code), obligation, option, right, or restriction whether imposed by agreement, understanding, law, equity or otherwise (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated) in or with respect to any assets of the Sellers and/or against the Sellers.

"**Payroll/Tax Deposit**" shall mean all or any portion of the $60,000.00 deposit held in reserve by counsel for the Trustee pursuant to the DIP Order.

"**Person**" shall mean any individual, corporation, partnership, limited liability company, trust, association, joint venture or other entity of any kind whatsoever.

"**Remaining Net Operating Losses**" shall mean net operating loss carryforwards, carrybacks or other tax credits of Sellers in excess of the amounts required to offset any otherwise taxable income of Sellers and/or Seller's bankruptcy estates incurred prior to or after the Petition Date, and only after the acceptance of all tax returns by applicable governmental authorities.

"**Sale Approval Order**" shall mean an order of the Bankruptcy Court, naming the Buyer as the winning bidder at the Auction and approving consummation of the transactions contemplated hereby by Buyer and Sellers, reasonably satisfactory in form and substance to Buyer and the Trustee, entered after a hearing conducted on adequate notice given in the Bankruptcy Case.

"**Secured Notes**" shall mean the amended and restated secured bridge loan and note agreements executed by the Debtors in November 2012 in favor of the Supporting Noteholders and/or any predecessor notes, security agreements or supporting documents issued by the Debtors or any of them in 2012 in favor of the Supporting Noteholders.

"**Supporting Noteholders**" shall mean the following: Golden Opportunity Consulting LLC, Keith Mueller, Bob Grayson, George Naddaff, Phillip George, Greg Storm, Prospect Point, Inc., Mark Greenberg, Donald Richards, Michael D. Goodson, Kenneth Corless, Kenton Keller, Martingale Holdings II, LLC, Timothy Finnegan, Harry Brakeley, Philip Sheibley, Scott Jecmen, Warren Watkins, Bob W. Denner Living Trust, Terry Adams, 1998 Rey Family Trust and any other successors to the foregoing, parties claiming through the foregoing and/or parties who assert claims under any bridge notes issued by the Debtors in 2012.

## ARTICLE II

### PURCHASE AND SALE OF ASSETS BY BUYER,
### ASSUMPTION OF LIABILITIES AND PURCHASE PRICE

2.1     **Purchase and Sale of Assets**.  Upon the terms and subject to the conditions and provisions contained herein and in the Sale Approval Order, at the Closing, Sellers shall sell, transfer and assign to Buyer, and Buyer shall acquire and accept from Sellers, free and clear of

3

any and all Encumbrances and "as is and where is", all of the assets of Sellers, other than the Excluded Assets, including but not limited to the following (collectively, the "Acquired Assets"):

(a)     all personal property of the Sellers, including inventory, machinery, equipment, furniture, tools and other tangible property (other than the Excluded Assets);

(b)     subject to Section 6.5 of this Agreement, any rights under contracts, agreements, leases and licenses to which any one of Sellers is a party and which constitute Assumed Contracts;

(c)     all licenses, approvals and permits of Sellers, to the extent assignable;

(d)     all U.S. and foreign inventions, invention disclosure statements, trademarks (as listed on Schedule 2.1(d)), phone numbers, service marks, certification marks, collective marks and trade names, patent applications, patents and registered rights and continuations thereof, trade secrets, confidential information, know how, show how, trade dress, industrial designs, formulations, recipes, copyrights, mask works, websites, e-mail addresses, Internet domain names, customer lists, goodwill and other items of intangible or intellectual property;

(e)     all accounts receivable, notes receivable, other obligations receivable, cash and cash equivalents other than the Payroll/Tax Deposit;

(f)     all post-petition prepaid expenses and deposits;

(g)     subject to Section 2.6 below, the Remaining Net Operating Losses; and

(h)     all books and records of Sellers (other than corporate governance documents and historical financial information), whether in hard copy or computer format, to which Buyer shall afford Sellers reasonable access after the Closing.

2.2     **Excluded Assets**. Notwithstanding anything to the contrary contained in this Agreement, the Acquired Assets shall not include all (collectively the "Excluded Assets"):

(a)     insurance policies and proceeds of insurance (provided that, if Sellers receive any insurance proceeds post-petition on account of damage to the Acquired Assets, at Buyer's option, Sellers shall either apply said proceeds toward the repair of the Acquired Asset or turn over such insurance proceeds to Buyer at Closing);

(b)     rights and obligations under contracts, agreements, leases or licenses of Sellers which do not constitute Assumed Contracts hereunder;

(c)     stock interests in Knowfat Landmark and Knowfat DC;

4

(d)     all rights to or claims for refunds or rebates of taxes for any period ending on or prior to the Closing Date, and the benefit of net operating loss carryforwards, carrybacks or other credits of Sellers relating to any such period other than the Remaining Net Operating Losses; and

(e)     causes of action, judgments, claims, demands, rights of recovery or set-off of whatever nature, condemnation awards, including, without limitation, avoidance actions arising under 11 U.S.C. §§544-551, but excluding causes of action arising in the ordinary course of business which are (i) required or beneficial to enforce Buyer's rights to ownership of or with respect to the Acquired Assets or (ii) related to the condition of the Inventory.

2.3     **Assumption of Liabilities**.  Upon the terms and subject to the conditions and provisions contained herein, the Buyer shall assume all (collectively the "Assumed Liabilities"): (a) post-petition trade payables incurred by the Sellers in the ordinary course of business, and accrued payroll, payroll taxes, meals taxes and vacation pay (but not professional fees, tax liabilities (other than payroll and meals taxes) or damages arising from the rejection of executory contracts and/or unexpired leases); and (b) liabilities and obligations of the Sellers arising under the Assumed Contracts, including any Cure Claims.  Buyer shall provide adequate assurance of future performance of the Assumed Contracts required for assumption and assignment, pursuant to Section 365(b) of the Bankruptcy Code.

2.4     **Liabilities Not Assumed**.  Except as expressly set forth in this Agreement, Buyer shall not assume or be required to perform any liability or obligation for any Encumbrance, and, except as otherwise provided herein, the Acquired Assets shall be sold and conveyed to Buyer free and clear of all Encumbrances whatsoever.

2.5     **DIP Financing; Purchase Price**.

(a)     Purchase Price.  DIP Financing.  If the Closing does not occur because Buyer is in material default of this Agreement, then the DIP Financing will be deemed satisfied and Buyer shall be deemed to have waived any claim arising from or relating to the DIP Financing.

(b)     Purchase Price.  At Closing, the Buyer shall pay, assume or deliver the following as consideration for the Acquired Assets (the "Purchase Price"):  (a) cash in an amount equal to $1,000,000.00, less the amount of the Payroll/Tax Deposit remaining at Closing, which shall be released to Sellers at Closing (collectively the "Cash Portion"); (b) the Assumed Liabilities; (c) a release from the Supporting Noteholders by which the Supporting Noteholders will, without any payment by the Debtors, (i) release all liens, claims and encumbrances against the Debtors (including any and liens in connection with the Secured Notes), and (ii) waive the right to assert any and all rights to which the Supporting Noteholders would be entitled in connection with such claims, security interests and liens pursuant to the Bankruptcy Code (the "Notes Waiver"); and (d) a release of all liens, claims and encumbrances against the Debtors arising from or related to the DIP Financing, without any payment by the Debtors (the "DIP Waiver" and together with the Notes Waiver the "Claim Waivers").  The cash portion of the Purchase Price shall be paid by wire transfer of immediately available funds.  The Purchase Price shall be allocated as described on

Schedule 2.5(b).

2.6     **Net Operating Losses.**    In the event that the Bankruptcy Court declines to authorize the transfer of the Remaining Net Operating Losses to Buyer, or Sellers are unable to transfer the Remaining Net Operating Losses to Buyer, Buyer shall nevertheless close on the balance of the proposed sale without an adjustment of the Purchase Price. The inability of Sellers to transfer the Remaining Net Operating Losses to Buyer shall not constitute a breach of this Agreement.    Following the Closing, Buyer shall indemnify,    defend and hold Sellers harmless from and against any claims, demands, obligations, losses, costs, damages, liabilities, judgments or expenses (including reasonable attorneys' fees, charges and disbursements) arising out of or in connection with the transfer of the Remaining Net Operating Losses to Buyer, including, without limitation (a) Sellers' need to respond to inquiries regarding the transfer of the Remaining Net Operating Losses, (b) any taxes, penalties, interest or other liability arising from the transfer of the Remaining Net Operating Losses to Buyer, and/or (c) that portion of any audit by a taxing authority that relates to the Remaining Net Operating Losses.

## ARTICLE III

### THE CLOSING

3.1     **Closing.**    The consummation of the transactions contemplated hereby (the "Closing") shall occur at the offices of Murphy & King, P.C., One Beacon Street, Boston, Massachusetts 02110, or at another location mutually agreed to by the parties, on a Business Day agreed to by the parties after entry of the Sale Approval Order, provided that no court of competent jurisdiction shall have entered an order staying such Sale Approval Order pending appeal or, at Buyer's discretion, no appeal of the Sale Order shall be pending, and all other conditions to Closing set forth in Article VII and Article VIII shall have been satisfied or waived, unless such date is extended by agreement of the parties hereto (the "Closing Date"). If the Sale Approval Order specifies that the provisions of 11 U.S.C § 363(m) apply and the conditions set forth in Article VII and Article VIII shall have been satisfied or waived, then the Closing Date shall be the second Business Day following the date of entry of the Sale Approval Order (unless such date is later than September 20, 2013). In no event shall the Closing Date be later than September 20, 2013.

3.2     **Conveyances at Closing.**

(a)     At the Closing, and in connection with effecting and consummating the transactions contemplated hereby, each Seller shall, to the extent necessary to deliver title, deliver the following to the Buyer:

(i)     an executed Bill of Sale;

(ii)     an executed counterpart of an Assumption and Assignment Agreement with respect to the Assumed Contracts;

6

(iii)    a certified copy of the Sale Approval Order;

(iv)    assignment documentation necessary for the conveyance of any intellectual property to Buyer;

(v)    the Limited Release required under Section 8.9 below; and

(vi)    such other instruments as shall be reasonably requested by the Buyer to vest in the Buyer title in and to the Acquired Assets in accordance with the provisions of this Agreement and the Sale Approval Order.

(b)    At the Closing, and in connection with effectuating and consummating the transactions contemplated in this Agreement, the Buyer shall deliver the following to the Sellers:

(i)    the Purchase Price, with the Cash Portion delivered by wire transfer of immediately available funds; and

(ii)    an executed counterpart of the Assumption and Assignment Agreement.

To the extent that a form of any document to be delivered under this Agreement is not attached as an Exhibit to this Agreement, such documents shall be in form and substance, and shall be executed and delivered in a manner, reasonably satisfactory to the Buyer and the Sellers.

3.3    **Transaction Expenses**.  Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the negotiation and execution of this Agreement and the consummation of the transactions contemplated hereby.

3.6    **Other Closing Matters**. Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

As an inducement to the Buyer to enter into this Agreement, the Sellers hereby make, as of the date of this Agreement, the following representations and warranties to the Buyer, but none of which shall survive the Closing of the transactions contemplated hereby for any reason whatsoever:

4.1    **Authorization of the Sellers**.  Subject to entry of the Sale Approval Order, Sellers have all necessary right, power, capacity and authority to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform their

7

obligations under this Agreement.  This Agreement has been duly executed and delivered by the Sellers and, subject to entry of the Sale Approval Order, is a valid and binding obligation of the Sellers enforceable against the Sellers in accordance with its terms.

4.2    **Title to Assets; Absence of Liens and Encumbrances, etc**.  The Sellers will upon the entry of the Sale Approval Order and the consummation of the transactions contemplated hereby transfer all right, title and interest in and to the Acquired Assets to the Buyer, free and clear of any and all Encumbrances; provided that the Acquired Assets will be delivered "as is and where is" condition, and without further representation or warranty.

4.3    **Brokers**.  No Person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable by the Sellers in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of the Sellers.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

As an inducement to the Sellers to enter into this Agreement, Buyer hereby makes the following representations and warranties as of the date hereof to the Sellers:

5.1    **Authorization**.  Buyer has all necessary power and authority to enter into this Agreement and has taken all action necessary to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder, and no other corporate proceedings on the part of Buyer are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Buyer and is a valid and binding obligation of Buyer, enforceable against it in accordance with its terms, except as enforceability may be limited or affected by applicable bankruptcy, insolvency, reorganization or other laws of general application relating to or affecting the rights of creditors and except as enforceability may be limited by rules of law governing specific performance, injunctive relief or other equitable remedies.

5.2    **Financing** .  On the Closing Date, Buyer will have sufficient cash on hand to deliver the Purchase Price. The closing of any financing shall not be a condition to Closing of the transactions contemplated by this Agreement.

5.3    **Brokers**.  No Person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

## ARTICLE VI

## COVENANTS

8

Sellers and Buyer covenant and agree as follows:

6.1   **Access**.  Between the date of this Agreement and the Closing Date, Buyer and its representatives shall, during regular business hours and upon reasonable notice, have reasonable access to business records and operations of Sellers related to the Acquired Assets.

6.2   **Employees**.  Buyer may, in its discretion, offer employment to any of the Debtors' existing employees; provided that (a) Buyer shall, prior to the Closing Date, inform Sellers which of the Sellers' existing employees it intends to tender offers of employment to; and (b) the acceptance of any offer of employment made by Buyer to Sellers' employees is not a condition precedent to the Closing.  Sellers shall be responsible for delivery of all COBRA notices to employees of Sellers terminated in connection with the Closing of the transactions contemplated hereby.  Buyer shall be responsible to pay all accrued vacation pay payable to Seller's employees terminated or not offered employment by Buyer in connection with the Closing of the transactions contemplated by this Agreement

6.3   **Further Assurances**.  In addition to the provisions of this Agreement, from time to time after the Closing Date, Sellers and Buyer will use all commercially reasonable efforts to execute and deliver such other instruments of conveyance, transfer or assumption, as the case may be, and take such other actions as may be reasonably requested to implement more effectively, the conveyance and transfer of the Acquired Assets.

6.4   **Condition of the Acquired Assets**.  The Buyer agrees and acknowledges that (a) the Buyer's decision to proceed with the transactions contemplated by this Agreement is based upon the Buyer's own inspection and investigation of the Acquired Assets and the business of Sellers; (b) the Buyer is familiar with the Acquired Assets and the business of Sellers and has been afforded the full opportunity, to the extent it desired to do so, to fully inspect and review (i) the books and records of Sellers, (ii) the title to the Acquired Assets, (iii) such other operational and financial information as the Buyer has found appropriate including, without limitation, any survey, appraisal, environmental, engineering, sales, production or employment matters, and (c) the Buyer is satisfied with each of the foregoing matters, and will, at Closing, acquire the Acquired Assets, without representation or warranty, express or implied, and in their then AS IS WHERE IS condition.  This provision shall survive the Closing or early termination of this Agreement.

6.5   **Assumption of Executory Contracts**.  Except as set forth in this Section 6.5, the Buyer shall have the right to, in Buyer's sole discretion, designate those contracts, agreements, leases and/or licenses of the Sellers which are to be Assumed Contracts, pursuant to the terms of this Section 6.5.  An initial list of the contracts, agreements, leases and/or licenses that are to be Assumed Contracts is set forth in Schedule 2.1(b) hereto.  At least seven (7) days prior to the hearing for approval of the Sale Approval Order, Buyer may by notice to the Sellers and without any additional consideration therefor, designate additional contracts, agreements, leases and/or licenses to be assumed and assigned or to designate executory contracts and agreements which

9

will not be assumed and assigned notwithstanding their prior inclusion in Schedule 2.1(b) or prior designation by the Buyer. Except as set forth in this Section 6.5,in the Sale Motion, the Sellers shall seek an order of the Court approving the assumption and assignment of the contracts, agreements, leases and/or licenses that are to be assumed by the Sellers and assigned to the Buyer listed on Schedule 2.1(b), as amended, if at all, under this Section 6.5. Except as set forth in this Section 6.5, the Sale Order shall provide that the assumption and assignment of the Assumed Contracts shall be free and clear of all Encumbrances, except for obligations of Buyer under Section 365 of the Bankruptcy Code.   Buyer and/or Sellers may file amended, supplemental, or additional pleadings, if required to address additions or deletions of contracts, agreements, leases and/or licenses to Section 2.1(b) made pursuant to this Section 6.5.  Buyer shall have sole responsibility to perform and/or satisfy any and all Cure Claims and to provide any adequate assurance of future performance of the Assumed Contracts required in order for the Sellers to assume the Assumed Contracts pursuant to § 365(b) of the Bankruptcy Code. Notwithstanding the foregoing: (a) Sellers shall have no obligation to assume and/or assign any employment agreement and/or other personal services contract unless the counter-party to such agreement and/or contract assents to the assumption and assignment in a writing delivered to the Sellers; and (b) the inability of Sellers to assume and/or assign any employment agreement and/or other personal services contract shall not constitute a breach of this Agreement.

6.6     **Access to Information; Maintenance of Records**.

(a)     Following the Closing, for a period of the later of (i) two (2) years after the Closing Date and (ii) the date of entry of an order of the Bankruptcy Court closing the Bankruptcy Case, or if converted to a case under Chapter 7 of the Bankruptcy Code, an order of the Bankruptcy Court closing such case, each party and its representatives shall have reasonable access to all of the books and records compiled with respect to the period prior to the Closing Date relating to the business of Sellers or the Acquired Assets, including all information pertaining to the Assumed Contracts, all employee records or other personnel and medical records required by law, legal process or subpoena, in the possession of the other party to the extent that such access may reasonably be required by such party in connection with the Assumed Contracts, or other matters relating to or affected by the operation of the business of Sellers and the Acquired Assets.

(b)     Such access shall be afforded by the party in possession of such books and records upon receipt of reasonable advance notice and during normal business hours; provided, however, that: (i) any such access shall be conducted in such a manner as not to interfere unreasonably with the operation of the business of any party; (ii) no party shall be required to take any action which would constitute a waiver of the attorney-client privilege; (iii) no party shall be required to take any action which would reveal confidential or proprietary information; and (iv) no party shall be required to supply the other party with any information which such party is under a legal obligation not to supply. The applicable party exercising this right of access shall be solely responsible for any costs or expenses incurred by it hereunder.

(c)    If the party in possession of such books and records shall desire to dispose of any such books and records prior to the expiration of such period, such party shall, prior to such disposition, give the other party a reasonable opportunity at such other party's expense, to segregate and remove such books and records as such other party may select.

6.7    **Conduct of Sellers's Business**.  Prior to the Closing Date, Sellers will operate the Sellers' businesses in the ordinary course and consistent with past practice and not enter into any transactions other than in the ordinary course of business. Entering into franchise agreements, as franchisor, acceptable to the Buyer in the Buyer's reasonable discretion, is within Sellers' ordinary course of business.

## ARTICLE VII

## CONDITIONS TO SELLER'S OBLIGATIONS

The obligation of Sellers to consummate the transactions contemplated hereby is subject, in the reasonable discretion of Sellers, to the satisfaction, on or prior to the Closing Date, of each of the following conditions any of which may be waived (in whole or in part) by Sellers in accordance with Section 9.6 hereof:

7.1    **Entry of Sale Approval Order**.  The Sale Approval Order shall have been entered by the Bankruptcy Court and no court of competent jurisdiction shall have entered an order staying such Sale Approval Order pending appeal.

7.2    **Instruments of Conveyance**.  The Buyer shall have executed and delivered to Sellers at the Closing all of the documents provided for in Section 3.2(b) hereof.

7.3    **Absence of Litigation.**  No court action or proceeding shall have been commenced to restrain or prohibit the transactions contemplated by this Agreement, or the acquisition by Buyer of the Acquired Assets following the Closing.

7.4    **Payment or Delivery of the Purchase Price**.  Buyer shall have paid the Cash Portion  of the Purchase Price (as adjusted hereunder) in immediately available funds, assumed the Assumed Liabilities and delivered the Claim Waivers.

## ARTICLE VIII

## CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer to purchase the Acquired Assets and to consummate the transactions contemplated hereby are subject, in the reasonable discretion of Buyer, to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer in accordance with Section 9.6 hereof:

11

8.1  **Form and Content of Documents.**  Notwithstanding any provision of this Agreement, all orders and other documents used in the proposed transaction shall have been in a form and substance satisfactory to the Buyer in Buyer's reasonable discretion.

8.2  **Filing of Motions.**  On or before August 12, 2013, Sellers shall have filed a motion for an order with the Bankruptcy Court seeking a hearing to consider the approval of each of the Bidding Procedures (as hereafter defined) (the "Bidding Procedures Motion"), and the sale of the Acquired Assets to Buyer pursuant to the terms of this Agreement (the "Sale Motion").

8.3  **Entry of Sale Approval Order.**  The Sale Approval Order shall have been entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Trustee and Buyer, on or before September 18, 2013.

8.4  **Specific Requirements for Sale Order.**  The Sale Approval Order shall have, without limitation, (1) approved the sale of the Acquired Assets to Buyer on substantially the terms and conditions set forth in this Agreement (subject to  any bidding which occurs at the Auction) and authorize the Sellers to proceed with the transaction, (2) contained findings that Buyer is a good faith purchaser of the Acquired Assets, (3) provided that the sale of the Acquired Assets to Buyer shall be free and clear of all Encumbrances, (4) provided pursuant to Bankruptcy Rules 6006(d) and 6004(g) that the Sale Approval Order shall not be stayed but shall be effective immediately, and (5) provided that, to the fullest extent permitted by law, all government permits and licenses currently issued to Sellers shall be transferred to Buyer.

8.5  **Absence of Litigation.**  No court of competent jurisdiction shall have entered an order staying the Sale Approval Order pending appeal and, at the Buyer's discretion, no appeal shall be pending.

8.6  **Instruments of Conveyance.**  The Sellers shall have executed and delivered to Buyer at the Closing all of the documents provided for in Section 3.2(a) hereof.

8.7  **Representation and Warranties.**  The representations and warranties of Sellers contained in Article IV of this Agreement shall be true and correct at Closing, in all material respects.

8.8  **Material Adverse Change.**  There has been no material adverse change in the business, assets, operations, financial condition or prospects of Sellers.  The term "material adverse change" shall be limited to: (a) the cessation of operations by Franchise, UFood and/or Watertown; (b) the entry of any order by the Court to convert any of the Sellers' Chapter 11 bankruptcy proceedings to Chapter 7 proceedings; (c) except in connection with a Competing Bid (as hereafter defined), the execution by Sellers of an agreement with a third party for the sale of the Acquired Assets; (d) the termination by Sellers, other than for cause, of any of the Designated Employees; or (e) the failure of Sellers to execute the franchise agreement with Sodexo Operations, LLC for the store located at SUNY Albany.

12

8.9 **Limited Release by Trustee**. The Trustee shall have executed and delivered at Closing a limited release to the Supporting Noteholders of any and all claims that the Trustee, the Debtors and the Debtors' bankruptcy estates may have that arise from or relate to the Secured Notes, including any causes of action under Chapter 5 of the Bankruptcy Code with respect to the Secured Notes.

**ARTICLE IX**

**MISCELLANEOUS**

**9.1** **Bidding Procedures; Termination Fee**

(a) **Bidding Procedures**. Sellers shall request approval of bidding procedures from the Bankruptcy Court that include, among others, the following terms (collectively, the "Bidding Procedures"):

(i) Any competing bid, offer or other arrangement shall be deemed to qualify as a competing bid (a "Competing Bid") only if made upon terms and provisions substantially similar to those set forth in this Agreement and in respect of the sale and purchase of substantially all of the Acquired Assets and assumption of the Assumed Liabilities and payment of an amount equal to (A) the Cash Portion, plus (B) the outstanding amount of the DIP Financing plus (C) an amount of at least $60,000.00 in excess of the Cash Portion; provided that, a competing bid, offer or other arrangement need not include the Claim Waivers in order to qualify as a Competing Bid.

(ii) Any competing bidder pursuant to section [9.1(a)(i)] must deliver a deposit to Sellers in an amount equal to $100,000.00 at the time of submission of such bid and satisfy Sellers of the bidder's ability to consummate the transaction. The Bidding Procedures Order shall require competing bidders to execute a confidentiality agreement prior to commencing due diligence.

(iv) An Auction for the Acquired Assets shall be held only if there is a Competing Bid.

(v) Only persons that have submitted a timely qualified Competing Bid may participate in any Auction for the Acquired Assets. Notwithstanding this subsection of the Bidding Procedures, Buyer may participate in any Auction.

(vi) Bidding at any Auction for the Acquired Assets shall be conducted as determined by the Trustee or the Bankruptcy Court, provided that, bids in any open bidding process shall increase in increments not less than $25,000.00.

(vii) Buyer shall be entitled to improve its offer at any Auction for the Acquired Assets.

13

(b)      **Termination Fee.**      The Bidding Procedures Order shall approve the payment to Buyer of a termination fee ("Termination Fee") in the event of acceptance by Sellers of a Competing Bid (a "Competing Transaction").  The Termination Fee shall equal the lesser of (i) $50,000.00, or (ii) reasonable out-of-pocket costs, fees and other expenses of Buyer (including legal expenses and other professional fees and expenses, and travel expenses) incurred in connection with the negotiation and preparation of Buyer's offer and this Agreement.  The Bidding Procedures Order shall also provide, without limitation, that any Termination Fee shall be paid solely from the proceeds of the Closing of the Competing Transaction and paid upon the later to occur of (i) entry a final order of the Bankruptcy Court approving the actual amount of the Termination Fee calculated hereunder and (ii) Closing of the Competing Transaction, so long as Buyer is not in breach of this Agreement.

9.2      **Termination**.

(a)      **Termination**.  In addition to any other rights of termination of Buyer expressly provided in this Agreement, this Agreement may be terminated prior to the Closing:

(i)      by the mutual written consent of Buyer and Sellers (subject to the approval of the Bankruptcy Court) at any time;

(ii)      by Buyer if (A) Buyer is not the winning bidder at the Auction, or (B) one or more of the conditions set forth in Article VIII is not satisfied on or before the date specified or the Closing Date (as the case may be) for any reason other than a breach of this Agreement by Buyer, or (C) the Sale Approval Order is not entered by the Bankruptcy Court on or before September 18, 2013, through no fault of Buyer or (D) the Closing has not occurred on or before September 20, 2013, through no fault of Buyer, provided however, if the Buyer is the second highest bidder at the Auction, the Buyer may not terminate this Agreement pursuant to this Section 9.2(a)(ii), until the earlier of (y) the closing of a sale of the Acquired Assets with a party other than the Buyer; or (z) twenty (20) days following entry of a sale approval order naming a party other than the Buyer as the winning bidder at the Auction;

(iii)      by Sellers (A) if Buyer is not the winning bidder at the Auction, or (B) if the condition set forth in Section 7.3 is not satisfied on the Closing Date, or (D) the Closing has not occurred on or before September 20, 2013, through no fault of Sellers;

(iv)      by Sellers if the conditions set forth in Section 7.2 or Section 7.4 are not satisfied on or before the Closing Date (for any reason other than breach of this Agreement by Sellers), or a breach of this Agreement by Buyer occurs, and in each case the DIP Financing will be deemed satisfied and Buyer shall be deemed to have waived any claim arising from or relating to the DIP Financing.

(b)      **Event of Termination; Remedies**. In the event of termination of this Agreement pursuant to Section 9.2(a):

14

(i)     each party shall return all documents, work papers and other material of any other party, or those prepared by a party from the review of such documents, work papers and other material of the other party, relating to the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same;

(ii)     no confidential information received by any party with respect to the business of any other party or its affiliates shall be used or disclosed to any third party, unless required by law;

(iii)     the rights and obligations of the parties hereto under this Agreement shall terminate (other than the provisions of this Section and the provisions related to the treatment of the DIP Financing under Section 9.2(a)(iv)) and there shall be no liability of any party hereto to any other party hereunder and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement; provided that the foregoing shall not relieve any party of liability for damages actually incurred by any other party as a result of any breach of this Agreement resulting from act or omission of the party permitting, causing or committing such breach.

(c)     **Standby Obligation.**  Notwithstanding the approval of a sale approval order naming a party other than the Buyer as the winning bidder at the Auction, the Buyer shall, to the extent that the Buyer is the second highest bidder at the Auction, remain committed to consummate the transactions contemplated hereby for a period of twenty (20) days following entry of such order by the Bankruptcy Court.  If the Trustee, at his sole election, delivers notice to the Buyer, within fifteen (15) days after entry of the third party sale approval order, that the third party transaction will not be consummated and that the Trustee intends to consummate the transactions contemplated hereby, the Buyer shall take all actions required in this Agreement to complete the purchase of the Acquired Assets on a Business Day within five (5) days following such notification, as if the Buyer had been the winning bidder at the Auction and the Sale Approval Order had been originally entered.

9.3     **Assignment; Successors**.  Except for an assignment by Buyer to an affiliate of Buyer prior to Closing, neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the other parties to this Agreement.   Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, including without limitation any successor Chapter 11 or Chapter 7 trustee appointed in the Bankruptcy Case, and no other Person shall have any right, benefit or obligation hereunder.

9.4     **Notices**.  All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by telecopy, upon receipt of telephonic confirmation; when transmitted if transmitted by electronic

15

mail; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (including Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. In each case notice shall be sent to:

| | |
|---|---|
| If to the Sellers, addressed to: | Harold B. Murphy,<br>Chapter 11 Trustee<br>Murphy & King, Prof. Corp.<br>One Beacon Street<br>Boston, MA 02108<br>(617) 423-0400 |
| with a copy to: | D. Ethan Jeffery, Esq.<br>Murphy & King, Prof. Corp.<br>One Beacon Street<br>Boston, MA 02108<br>(617) 423-0400 |
| If to the Buyer, addressed to: | UFood Investment Partners, LLC<br>8112 Clearview Drive<br>Parkville, MO 64152<br>Attention: Greg Storm |
| with a copy to: | Paul W. Carey, Esq.<br>Mirick, O'Connell<br>100 Front Street<br>Worcester, MA 01608<br>(508) 791-8500 |

or to such other place and with such other copies as either party may designate as to itself by written notice to the others.

9.5    **Choice of Law; Jurisdiction**. This Agreement shall be construed and interpreted, and the rights of the parties determined in accordance with, the laws of the Commonwealth of Massachusetts (without regard to its conflicts of laws principles) and the Bankruptcy Code. Each party irrevocably consents to the service of any and all process in any action or proceeding arising out of or relating to this Agreement by the transmitting of copies of such process to each party at its address specified in Section 9.4 in a manner provided for in Section 9.4. The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) over any dispute arising out of or relating to this Agreement and any other agreement or instrument contemplated hereby or entered into in connection herewith, or any of the transactions contemplated hereby or thereby and any such dispute shall be deemed to have arisen in the Commonwealth of Massachusetts. Each party hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest

16

extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.

9.6   **Entire Agreement; Amendments and Waivers**.   This Agreement, together with all exhibits and schedules hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by on or behalf of the party to be bound thereby.   No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

9.7   **Construction**.   The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. All Exhibits and schedules attached are made a part hereof. All terms defined herein shall have the same meaning in the exhibits, except as otherwise provided therein. The terms "hereby", "hereof", "hereto", "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used.   Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees.   The term "including" when used herein shall mean "including, without limitation."   Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

9.8   **Third Party Beneficiaries**.   No Person other than the parties hereto, shall have any rights or claims under this Agreement.

9.9   **No Waiver**.   The failure of either party hereto to seek redress for any breach, or to insist upon the strict performance, of any covenant or condition of the Agreement by the other shall not be, or be deemed to be, a waiver of the breach or failure to perform nor prevent a subsequent act or omission in violation of, or not strictly complying with, the terms hereof from constituting a default hereunder.

9.10   **Multiple Counterparts**.   This Agreement may be executed in one or more counterparts, which may be delivered electronically, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.11   **Invalidity**.   In the event that any one or more of the provisions, or any portion thereof, contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then such provision shall

17

remain valid and enforceable to the maximum extent permitted by law. Such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

9.12    **Publicity**.    Each party shall consult with the other prior to issuing any press release or otherwise making any public statements with respect to the transactions contemplated hereby, and no party shall issue any such press release or make any such public statements or comments relating to these transactions prior to Closing without the prior written consent of the other (which shall not be unreasonably withheld), except as may be required by applicable law.

9.13    **Cumulative Remedies**.    All rights and remedies of either party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies, including the right to specific performance of the terms hereof.

9.14    **Representation by Counsel; Mutual Negotiation**.    Each party has been represented by counsel of its choice in negotiating this Agreement. This Agreement shall therefore be deemed to have been negotiated and prepared at the joint request, direction and construction of the parties, at arm's-length with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party.

9.15    **Time**.    Time is of the essence of this Agreement.

*[Signatures Follow on Next Page]*

18

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed under seal all as of the day and year first above written.

UFOOD RESTAURANT GROUP, INC.          UFOOD INVESTMENT PARTNERS, LLC

By:_____          By:_____
Name: Harold B. Murphy, as trustee and not          Name: Greg Storm
individually          Title: Managing Member
Title:  Chapter 11 Trustee

KNOWFAT FRANCHISE COMPANY, INC.          KFLG WATERTOWN, INC.

By:_____          By:_____
Name: Harold B. Murphy, as trustee and not          Name: Harold B. Murphy, as trustee and not
individually          individually
Title:  Chapter 11 Trustee          Title:  Chapter 11 Trustee

654386

19

Schedule 2.1(b)

| Agreement Type | Counter Party | Date of Signature | Territory/Location | Cure Amount |
|---|---|---|---|---|
| Franchise Agreement | Dee Robinson - JJR Concessions | 2/12/2010 | Cleveland Hopkins International Airport 5300 Riverside Drive Cleveland, Ohio 44135 | $0.00 |
| License Agreement | Gina Puente - Puente concessions | 5/23/2008 | "DFW" Airport, Dallas, TX | $0.00 |
| License Agreement | Gina Puente - Puente concessions | 12/17/2009 | Parkland Memorial Hospital - Dallas, TX | $0.00 |
| Franchise Agreement | Midfield Concessions | 9/16/2009 | Logan International 1 Harborside Drive Boston, Ma 02128 Airport Terminal C, space E-35 | $0.00 |
| Franchise Agreement | Sodexo | 5/30/2013 | NSA - National Security Agency 9800 Savage Rd. Fort Meade, Maryland 20755 | $0.00 |
| Franchise Agreement | Sodexo | 5/9/2012 | FAA - Department of Transportation Federal Aviation Administration 800 Independence Ave SW Washington, DC 20591 | $0.00 |
| Franchise Agreement | Sodexo | 5/22/2013 | Dyess Air Force Base – Dyess, TX 79607, F.E. Warren Air Force Base WY, 82005, Beale Air Force Base CA, 95903, Vandenberg Air Force Base, CA, Elgin Air Force Base Elgin, FL 32542, Barksdale Air Force Base Barksdale, LA 7110, Ellsworth Air Force Base SD, 57706 | $0.00 |
| Franchise Agreement | Sodexo | 8/7/2013 | University at Albany – 1400 Washington Ave. Albany, NY 12222 | $0.00 |
| Franchise Agreement | Capital Alliance | 7/12/2012 | Vancouver, Canada | $0.00 |
| ADA (Area Development Agreement) | ASA Capital Alliance, LTD | 12/22/2011 | British Columbia, Canada | $0.00 |
| Franchise Agreement | HBF ATG – Hojeij | 12/6/2011 | Salt lake City International Airport, 1776 N. Terminal Drive Salt Lake City, Utah 84116 (Site: Concourse E space E-4) | $0.00 |
| Franchise Agreement | HBF ATG – Hojeij | 12/6/2011 | Salt lake City International Airport, 1776 N. Terminal Drive Salt Lake City, Utah 84116 (Site: Concourse C space 3-8) | $0.00 |
| ADA (Area Development Agreement) | HBF ATG – Hojeij | 8/26/2010 | Hartsfield Jackson International Airport and Salt Lake City International Airport | $0.00 |
| Joint Venture | APG IV, LLC | 9/9/2011 | 3 Units at Aberdeen Proving Ground | $0.00 |
| Management Agreement | APG IV, LLC | 9/9/2011 | 3 Units at Aberdeen Proving Ground | $0.00 |
| Vendor Contract | Coca-cola Refreshments, USA | 8/6/2012 | Product, Marketing and Advertising | $0.00 |
| Vendor Contract | Entrega Procurement Services, LLC | 8/1/2012 | Rebate, discounts, allowances | $0.00 |
| Vendor Contract | SYSCO Boston, LLC | 3/1/2010 | Distributor | $0.00 |
| Real Estate Lease | Logan Stores | 12/1/2014 | | $0.00 |
| Employment Agreement | John Nappier | 2/1/2013 | | $0.00 |

## Schedule 2.1(d)

### Trademark List

| TrademarkStatus | TrademarkName | AppNumber | Fildate | RegNumber | RegDate | CountryName |
|---|---|---|---|---|---|---|
| Registered | PROCCINO (BLOCK) | 78/835432 | 13-Mar-06 | 3407063 | 1-Apr-08 | United States of America |
| Registered | UFOOD GRILL (BLOCK) | 77/142764 | 28-Mar-07 | 3606548 | 14-Apr-09 | United States of America |
| Registered |  | 77/142775 | 28-Mar-07 | 3606549 | 14-Apr-09 | United States of America |
| Registered | UNFRIES (BLOCK) | 77/149716 | 5-Apr-07 | 3415364 | 22-Apr-08 | United States of America |
| Registered | SMUUTHIES (BLOCK) | 77/382156 | 28-Jan-08 | 3678014 | 1-Sep-09 | United States of America |
| Registered | UBOWLS (BLOCK) | 77/382182 | 28-Jan-08 | 3492356 | 26-Aug-08 | United States of America |
| Registered | FIRED-UP BURGERS (BLOCK) | 77/382201 | 28-Jan-08 | 3611041 | 28-Apr-09 | United States of America |
| Registered | FEEL GREAT. EAT SMART (BLOCK) | 77/389076 | 5-Feb-08 | 3593932 | 24-Mar-09 | United States of America |
| Registered | UBERRY (BLOCK) | 77/403513 | 22-Feb-08 | 3528967 | 4-Nov-08 | United States of America |
| Registered | UFOOD (BLOCK) | 77/790352 | 27-Jul-09 | 3902612 | 11-Jan-11 | United States of America |
| Registered | WHERE DELICIOUS MEETS NUTRITIOUS (BLOCK) | 85/026124 | 29-Apr-10 | 3890134 | 14-Dec-10 | United States of America |
| Registered | UBERRY BLAST (BLOCK) | 85/141847 | 30-Sep-10 | 4068396 | 6-Dec-11 | United States of America |
| Unfiled | UBERRY AN AMERICAN OBSESSION (BLOCK) | | | | | United States of America |
| Allowed | SMART CASUAL (BLOCK) | 85/226507 | 26-Jan-11 | | | United States of America |
| Allowed | UFOOD EXPRESS (BLOCK) | 85/250740 | 24-Feb-11 | | | United States of America |
| Pending | UFOOD GRILL (BLOCK) | 1555266 | 7-Dec-11 | | | Canada |

IN RE: UFOOD RESTAURANT GROUP, INC., *ET AL.*
BANKRUPTCY NO. 12-19702 (HJB)

EXHIBIT B TO

MOTION BY CHAPTER 11 TRUSTEE TO (A) AUTHORIZE
TRUSTEE TO ENTER INTO ASSET PURCHASE AGREEMENT WITH
UFOOD INVESTMENT PARTNERS, LLC; (B) AUTHORIZE SALE
OF THE DEBTORS' ASSETS BY PRIVATE SALE FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(C) AUTHORIZE THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS; AND (D) FOR RELATED RELIEF

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **UFOOD RESTAURANT GROUP, INC., et al.,**[1] | ) | |
| | ) | **Case No.  12-19702-HJB** |
| **Debtors** | ) | |
| | ) | |
| | ) | **Jointly Administered** |

## NOTICE OF (1) INTENT TO SELL ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (2) DEADLINES FOR FILING OBJECTIONS; AND (3) SALE HEARING DATE

TO CREDITORS AND PARTIES IN INTEREST:

**PLEASE TAKE NOTICE THAT**, on August 14, 2013, Harold B. Murphy, the Chapter 11 trustee for UFood Restaurant Group, Inc. ("UFood"), Knowfat Franchise Company, Inc. ("Knowfat Franchise"), KFLG Watertown, Inc. ("KFLG"), Knowfat of Landmark Center, Inc. ("Knowfat Landmark"), and Knowfat of Downtown Crossing, Inc. ("Knowfat DC", and together with UFood, Knowfat Franchise, KFLG and Knowfat Landmark, the "Debtors") filed the *Motion by Chapter 11 Trustee to (A) Authorize Trustee to Enter into Asset Purchase Agreement with UFood Investment Partners, LLC; (B) Authorize Sale of the Debtors' Assets by Private Sale Free and Clear of Liens, Claims, Encumbrances, and Interests; (C) Authorizing The Assumption and Assignment of Executory Contracts; and (D) For Related Relief (the "Sale Motion")* (the "Sale Motion"). Pursuant to the Sale Motion, the Trustee requests authority to sell substantially all of the assets (the "Acquired Assets") of UFood, Knowfat Franchise and KFLG (the "Sellers") to UFood Investment Partners, LLC ("UFIP") by private sale for a purchase price consisting of the following:[2] (a) cash in an amount equal to $1,000,000.00, less the amount of the unexpended Payroll/Tax Deposit at Closing; (b) the assumption of the Assumed Liabilities; (c) the delivery of a release from the Supporting Noteholders of all liens, claims and encumbrances against the Debtors; and (d) the delivery of a release of all liens, claims and encumbrances against the Debtors arising from or related to the DIP Loan.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to a certain order of the United States Bankruptcy Court for the District of Massachusetts (the "Court") (the "Bid Procedures Order"), the Court has established procedures for bidding and proposing counteroffers for the

---

[1] The related joint administered cases with the case of UFood Restaurant Group, Inc. are: Knowfat Franchise Company, Inc., Case No.: 12-19704, KFLG Watertown, Inc., Case No.: 12-19705, Knowfat of Landmark Center, Inc., Case No.: 12-19708, and Knowfat of Downtown Crossing, Inc., Case No.: 12-19706.

[2] Terms not defined herein have the meaning set forth in the Sale Motion. To the extent of any conflict between this notice and the Sale Motion, the terms of the Sale Motion shall govern.

sale. **Any party intending to make counteroffers or bid on the Acquired Assets being sold must comply with the relevant Bid Procedures Order.** All counteroffers or bids must be submitted on or before _____ **(Eastern Time)**. See below for instructions on how to obtain copies of the Bid Procedures Order, the Sale Motion and related exhibits.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Section 363 of the Bankruptcy Code, the Acquired Assets will be sold free and clear of all liens, claims, interests and encumbrances, including without limitation all consensual liens and security interests and all liens or claims arising by operation of law, except as specifically provided in the Sale Motion. Any and all such liens, claims, encumbrances and interests shall attach to the proceeds of the sale to the same extent and priority as existed prior to the filing of the Debtors' bankruptcy cases. Nothing in this notice constitutes a waiver of the Trustee's right to review and challenge the extent, priority or validity of any lien, claim, encumbrance or interest.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing on the Sale Motion will be held on _____ **(Eastern Time)** (the "Sale Hearing") before the Honorable Henry J. Boroff, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Massachusetts, _____. The Trustee will seek approval of the Sale Motion at the Sale Hearing.

**ANY OBJECTION** to the Sale Motion must be made in writing and filed with the Clerk of the Court, via the Bankruptcy Court's CM/ECF System (for registered users) or by mail by _____ **(Eastern Time)** (the "Objection Deadline") and served so that the objection is **received on or before** the Objection Deadline by (a) counsel for the Trustee, D. Ethan Jeffery, Esq., Murphy & King, Professional Corporation, One Beacon Street, Boston, MA 02108; (b) counsel for UFIP, Paul Carey, Esq., Mirick O'Connell DeMallie & Lougee LLP, 100 Front Street, Worcester, MA 01608; (c) Jennifer Hertz, Esq., the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949; (collectively, the "Notice Parties"). Any party filing an objection to the Sale Motion is required to appear at the Sale Hearing and absent such appearance, such objection may be overruled and deemed moot. Any objection to the Sale Motion shall be governed by Federal Rule of Bankruptcy Procedure 9014.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE TO YOU OR OPPORTUNITY TO OBJECT.

**COPIES OF THE SALE MOTION, RELATED EXHIBITS, AND THE BID PROCEDURES ORDER ARE AVAILABLE BY ELECTRONIC MAIL AND/OR BY REGULAR MAIL UPON REQUEST FROM THE UNDERSIGNED, FREE OF CHARGE.**

NOTICE TO ALL PARTIES SERVED:

**Your rights may be affected.**  You should read this Notice carefully and discuss it with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.

Any request for a continuance **MUST** be made by **WRITTEN MOTION**.  *See* MLBR 5071-1.

HAROLD B. MURPHY,
CHAPTER 11 TRUSTEE,
By his attorneys,

_____
Harold B. Murphy (BBO #326610)
D. Ethan Jeffery (BBO #631941)
MURPHY & KING, Professional Corporation
One Beacon Street, 21st Floor
Boston, MA  02108
Tel:    (617) 423-0400
Fax:    (617) 556-8985
Email: dej@murphyking.com

Dated:  August __, 2013
654378